Mr. McKenna. Yes, Your Honor. May it please the Court. First, thank you for the courtesy of accommodating me with my family situation. Sure. Proceed. Thank you. Your Honor, this case sits at the intersection of ERISA, which is a law designed to protect the retirement funds of the workers, Common Law Trust, which ERISA is based on, this Court's decision in Brayden, and the two Supreme Court decisions, Dudenhofer and Tibble. We submit that the District Court committed error because it, number one, didn't follow Brayden and give us every reasonable inference of our complaint, which alleged that this single stock fund, non-diversified of the old company, not the stock of the company that they were employed, was rolled over and left to sit, $6 million, with no examination, no effort to review and decide whether it was prudent. We challenged their process by saying there was no process, and the District Court erroneously held, changed the language of what we were complaining about and said that we were complaining that their process was flawed and that our allegations were threadbare. And that's not what we were saying. We were saying that this company spun off in May of 2004. The stock that was sitting there, again, an undiversified single unit, has no business being in a semiconductor plant. It's no longer the company plant. It's not, there's no public policy for why this employer stock should be here. It's not the employer. They let it sit, and we alleged that by the time a year and a half had gone by, when SunEdison was making a public offer to buy Vivint Solar and the market reacted in alarm because the debt of SunEdison was going through the roof, that they should have, at that point, had some process to review why are we holding this stock, ask themselves why are we holding this stock. And that was our allegation that they never did, and eventually the stock was worthless. And Fifth Third itself, Dudenhofer, says that ERISA is founded on trust law. The point of that case was to eliminate the presumption of prudence, which some courts had put in, to protect fiduciaries when they were between the rock and the hard place of being insiders who are holding their own company stock and afraid to break the law, the securities law, because they know they have inside information. They don't know what to do. That's not our situation. This stock, this legacy stock is the same as a mutual fund. It's the same as a Vanguard account. It has no connection to the company. There's no rock in the hard place. They have to do their duty to periodically review the assets being held in trust. This is other people's money being held for retirement. The purpose of the... Counsel, does your complaint include periodic review in it anywhere? I think we... You say properly monitor. You say failure to investigate. Yes, Your Honor. I don't know if we use the word periodically, but... I don't think you do. Page 29 of your complaint, right, is your main continuing duty to monitor those paragraphs? Yes. Paragraph 65 to 68. We have 63, 65, 68, 74, 83, 86, 90. And under Braden, when you read a complaint as a whole, you're not supposed to parse and pick. If you read our complaint as a whole, it basically says, what on earth are these people doing holding this legacy stock fund for no public policy reason and never examine it once? And we ask for discovery. We ask... Do you say that in your I'm not sure if I use those words, Judge, but I'm saying if you read my complaint fairly, that's what we're complaining about. We're complaining about why is this stock of another company in our plan? Why are you not examining it? Why did you not review it? And we allege they took no action. We asked for the minutes of the investment committee, limited discovery, and the plan trading data to see if they even traded this stock ever. The defendants refused. They ran to court. Instead of a Rule 16 discovery conference, made a motion to stay discovery. We opposed it and we lost that motion. So right now, sitting in the drawer somewhere is the proof that I say will win my case that they did nothing. They never once examined this. How do you distinguish this from Dudenhofer? Without putting aside Tibble for the purposes of this question, how do you distinguish what you are alleging from what Dudenhofer said, which is just not normally a plausible claim? Now we're down to the nub of it. Dudenhofer says that a fiduciary of an ESOP doesn't have to try to outguess the market to figure out what the price should be. It's got a public price. It's $20. They don't have to guess that it should be $15. They don't have to guess that it should be $20. That's not what we're saying here. Having a price is not the same as being prudent. Having a value is not the same as being prudent. These are different considerations that a fiduciary has to do. So of course SunEdison stock has a price. It has a value. Its value started at $30. The market thought it was $30 and then it goes to buy Vivint and the market thinks the value of getting worse and worse. We're not saying the price is not the price. It's not the right price. We're saying take a look at it. Is it prudent? Have circumstances changed? The debt went from $2 billion to $11 billion. All the commentators are commentating that this company is in trouble. That's public information. Yes, exactly. But again, everything has a price but that cannot mean that just because it has a public price, it's prudent. That makes no sense. Otherwise, the Supreme Court in Tybil and Dudenhofer wouldn't be saying you have a continuing duty to monitor the prudence of the asset. Of course it has a price. So then don't you need to then plead something more than just the price or the value or the public information about it in order make a plausible claim? If I was trying to make a plausible claim that the price was wrong, I would need to have special circumstances to show there's inside information and the price is not really the price. The insiders in Fifth Third, they concealed that the bank's own loans were bad and the allegation was the price was artificially inflated and there were securities for our cases. That's not what we're trying to do here. I'll grant you the price of Sun Edison is the very price it is on every single day. My complaint is, did you do anything to consider whether that was prudent to keep holding this thing that has a price that keeps going down? Well, I'll push it a little. Is that the same as just saying it's too risky? That's where all the courts that have followed Dudenhofer and all the ESOP cases go astray because obviously the price reflects the riskiness. How many shares are out there and what's the price? If it's $100 and that stock goes to 50 because there's bad news, the market just decided this stock got riskier. That's why the price went down. So the price does factor in riskiness. But again, that doesn't mean... Let's take it the other way. If Dudenhofer applies to this case, this is what the decision will be. A fiduciary can buy a publicly traded asset with a public price, put it in the filing cabinet, and walk away. I don't have to do another bloody thing because it's got a price. Stay close to the mic because we're taping it, but go ahead. I don't have to do another bloody thing because it has a price. That cannot be the law. That is not the law. That has never been the law for a thousand years under fiduciaries. You're managing someone's money. You have a duty to monitor it periodically to see what is going on. There's no evidence in the record, other than our well-pleaded cohesive allegations, that they spun off, flipped this into the semi-plan, and did nothing. And it gets worse. If you look at the semi-plan, they copied it verbatim from the Sun-Edison plan. And we can find the Sun-Edison plan. You could take judicial notice of it. It's in the record in the Southern District of New York. Case number 1-16-CV-07950, docket entry 127-1, pages 48 to 49 of 64 on the ECF stamp. They literally took the plan overhaul, sections 18.1 and 18.2, which are in our record, on pages like A-142 and 143. Our plan even says that they will prohibit semi-employees from selling Sun-Edison if they violate the Sun-Edison's frequent trading policy. How could that even apply to workers who work for semi? They're not subject to some frequent trading policy of another company. So the evidence shows that, if, again, you give us the benefit of all inferences, that there's almost no thought went into this, no examination. They just copy the wording of the plan, copy the restrictions that can't even apply, and then just sail along and never examine it. It cannot be the law that that's appropriate. And it certainly can't be the law that we should be dismissed on a motion to dismiss. Brayden would roll over in its grave if Brayden was a person. This court held that you can't even expect the individuals to have access to the inside information that the fiduciaries have. So we can't know everything they did. And Brayden says we're not expected to. We allege that they should have done something. They did nothing. Any decision by Your Honors that, if it has a price, that's all I need to do, you're just saying that every fiduciary should just turn into a filing cabinet. And that's not the law. Thank you, Your Honors. Counsel, thank you for that. You've reserved the rest of the time for rebuttal. We'll hear from Mr. Meyer. Good morning. My name is Chris Meyer. I represent the appellees in this case, and with me today are my colleagues, Mark Blocker and Charles Insler. In Dudenhofer, Your Honors, the Supreme Court held that claims like this, that are premises entirely on publicly available information that involve a publicly traded stock on a major stock exchange, where there's no allegation that the market is not operating efficiently, they should be dismissed on the pleadings. And that's exactly what the district court did. Thiebaud has trust law, trust law, trust law, trust law. Did they plead enough on page 29, paragraph 65 to 68, and the other times they say failure to monitor, failure to actively monitor? Go ahead. I would submit no. I have two responses to that. First of all, the answer is no. At best, it's conclusory allegations about failure to monitor. And in fact, if you look at paragraph 87 of the complaint, and this is under count one, where they're summarizing, here's what a claim is, they actually say that during the relevant period, these are their words, despite their, the fiduciary's defendants, despite their knowledge of the imprudence of the investment, the defendants failed to take meaningful steps to protect plan participants. So they're actually saying, affirmatively, that the defendants knew this was an imprudent investment, which is totally inconsistent with the supposition that they were not paying any attention at all. But my second- Well, go ahead. Well, the nub of the case for me is, let's assume they can plead failure to monitor, and it's an imprudent investment, and so on and so forth. How, at the end of the day, do we sit down, and a lot of courts have talked about this, how do we reconcile Tibble and Dudenhofer? So tell me how those two cases intertwine, or how, why is this a Dudenhofer case, not a Tibble case? How do they work? How do you reconcile those two decisions? They're not at all inconsistent. In fact, Tibble and Dudenhofer were both authored by Justice Breyer, and I believe both opinions were unanimous. Dudenhofer is, sets forth what the pleading standard is, if you have a claim premised entirely on publicly available information. Tibble is actually a statute of limitations case. It doesn't address the standard whatsoever. It's a statute of limitations case. And what Tibble says- But it does say you have a duty to monitor. It does. And we're not disputing that fiduciary, that ERISA plan fiduciaries have a duty to monitor. But what Tibble also says, in the same sentence where it says there's a duty to monitor, it also says you have a duty to monitor investments and to remove imprudent ones. And that second part of that is where Dudenhofer comes in, because they have to allege more than a simple procedural failure to monitor. And that's what the courts have held since Dudenhofer, that have addressed this exact same argument. They say- Well, let's assume they get over the pleading hurdle. They've alleged that there's a duty to monitor, and they've alleged that based on the monitoring, they should have realized it was an imprudent investment. So they meet the sort of the facial Tibble standard. So then what happens? Well, I would say that if they- the facial Tibble standard actually incorporates the Dudenhofer standard. So if they've- the question in this case is whether they've plausibly alleged that the investment was imprudent. And that's the question that Dudenhofer squarely addresses. So in order to state a claim, they have to allege that there was a failure to monitor, and that that failure to monitor would have uncovered if they had- to put it another way, if the monitoring that they say didn't occur had occurred, they have to allege plausibly that the fiduciaries, that a fiduciary sitting in that position would have determined that this was an imprudent investment. But that's the question that Dudenhofer specifically addressed. That's what Dudenhofer addresses. Dudenhofer addressed the claim, the exact same claim as this, which is you have a publicly traded stock, and they're saying just that the fiduciary is solely on the basis of publicly available information. The rest of the market had the same information that the plaintiffs had, that the defendants had. It's all out there, and it's already incorporated in the market. The Council for 50 or 60 years diversification of assets, asset allocations, has many different names, has been the guidance for investments. And it can't be that just simply because it's listed on some exchange somewhere that it's a prudent investment. There have to be some imprudent investments. There can be imprudent investments. And they can be listed somewhere, and they can be completely imprudent. They can be. But what Dudenhofer is saying- Tell me how you fit them together. What Dudenhofer is saying is you can't fault fiduciaries under the efficient market theory, which is the whole underpinning of Dudenhofer. And by the way, that also includes the diversification and asset allocation on a bigger margin. But go ahead with your answer. Right. And under the efficient market theory, what the Supreme Court recognized in Dudenhofer is it's a fool's errand. Nobody can reliably out-predict what is going to happen in a stock price, whether it's going to go up or down. Now, he mentioned diversification in his statement. And in his reply brief, in the last page, last sentence, I think, of his reply brief, he raised for the first time ever in this appeal an issue about diversification. There is no claim of a lack of diversification in this case. The SunEdison plan offered 14 different investment options. The SunEdison stock fund was just one of those. The other ones were a wide range of mutual funds. They were a wide range of diverse investments. So the notion that there is some sort of diversification issue in this case, it's never been planned. It was never argued below. And it wasn't even mentioned until the reply brief and here today. And the other way you measure imprudence is by what the investor wants. Correct. Because suitability is a fancy name for it. That's right. Okay. Now, here it's a trust situation. So how do you measure suitability in a trust situation? Well, in this case, in some trusts, you just have one beneficiary. So you might know what's suitable for that particular. In an ERISA plan, you have hundreds, maybe thousands of participants of varying ages, different economic circumstances. So what might be prudent for a 62-year-old who's nearing the retirement age under the plan versus a 32-year-old,  Before you slice it that thinly, do think about an investment that nobody would want. Whether you've got the baby that you're investing for college for, or whether you've got the person who's about to die. Nobody would buy the stock. It's pure junk, junk, junk. Many junks, as I can say. And that can be listed somewhere on the exchange, right? It can be listed for 45 cents or something. It could be. It depends on what kind of exchange we're talking about. I know. You and I could go on, but we won't. So answer this question. At what point do you have to kick that one out? And how do you know? And what's the duty? Well, I would say in this type of situation, if you have a publicly traded stock, if it's a stock of the type that Dudenhofer was talking about, publicly traded, and it's on a major stock exchange where it's reliable and where you can rely on the market price, not to just tell you what the market price is, as a predictor of what people are thinking, your hypothetical said it was a stock that nobody would want. If it's truly a stock that nobody would want, it would be worth almost zero. I know it's got some sense. It's got some speculation. Go ahead. But it would be close to zero. And I think that's a fundamental problem with their claim in this case, which is they're saying that as of July 20th, 2015, their theory is that everybody in the market, everybody, nobody could have looked at this and said, and concluded anything other than this company is doomed to bankruptcy. And if that's the case, your honor, the stock would not have been trading at over $30 a share at that point. The stock would have been close to zero. I think what you're trying to say, but you don't want to say it, is that there's a duty to monitor, but as long as it's listed on a stock exchange, you're insulated from liability. It's not quite, I wouldn't quite go quite that far. It's not as long as you keep saying you won't go quite that far, but you won't tell us where, where, where's the line. You won't go that far, but what's, what's take up. So how far will you go? The line is, is the line that was run in Dudenhofer. And Dudenhofer says you need to play to plead special circumstances. And those special circumstances are, if there's something that happens that makes it imprudent to rely on the market, something that says, we don't think this, we don't think the market is operating efficiently. We don't think the market is efficiently incorporating the information. But then you go always right back and you always say, but if it's, as long as it's public information, the market's going to, it's an efficient, if, so, I mean, I don't understand the distinction. That's where I'm having trouble. You say there's special circumstances, the market isn't efficient, but then you always say, but as long as it's on an exchange, we assume an efficient market. We're not saying as long as it's on any exchange. Let's say it's on the NASDAQ. Okay, the NASDAQ, or in this case, it was the New York Stock Exchange, I think it's kind of the gold standard. What we're saying is, as long as the, there's nothing suggesting that the exchange was not functioning properly. Those are the special circumstances that are identified at Dudenhofer. Something that would tell you that we don't think we can rely on this market price anymore because there's something wrong with the market. So those are very extraordinarily narrow circumstances. I will grant that. And I think that was intentional because I think the Supreme Court looked at these cases and said, we think they're implausible. But you could think, we could think up some scenarios. What if hackers infiltrated the New York Stock Exchange and trading went down for a month? And during that time, the fiduciaries, the news came out that the stock was, it was worthless. Everybody knew it. There was no dispute. It was built on a fraud. And the fiduciaries met and they said, well, we know the stock is going to be worthless. But, I don't know, the market price hasn't changed. But that's because the market hasn't been operating, literally. That might be a case of special circumstances. So your theory is, and as you read Dudenhofer, as long as the market's operating as it's supposed to, the fiduciary is going to be insulated from liability. For this particular- Because anything that happens, even if it's, even if you get a, they say, it turns out the accounting was bad and the books were cooked, you're going to, you're going to say, well, then the market would reflect that fact. And therefore- The market would reflect that fact. And therefore, they're not going to be liable, they're not going to be liable for failing to, you know, make a guess about which way the stock is going to go. Because by the time they find out, the rest of the market's already found out and the stock has already dropped. So on day two, you know, just to really simplify this, let's say the stock in day one is 30. Day two, some bad news comes out, they find out at the same time as the market. By the time they can do anything, the stock has already dropped to, say, $2. So on day two, it's too late for them to do any, they can't go back in time and change their decision when it was 30. They have to, you know, go on the facts that they have on day two. And at that point, the stock price is at two. So they have a choice. They can say, well, we'll force all the participants to get rid of it now and guarantee an enormous loss. Or we can hold it and ride it out and maybe it'll go up. And that's what Dudenhofer is talking about, about predicting the future. They don't, they're not, nobody knows. The fiduciaries are in no better position than anybody else under the efficient market to guess when the stock is at $2. Nobody can reliably predict whether it's going to go back up or whether it's going to go down to zero. Nobody can do that reliably. And that's what Dudenhofer recognized. And so we can't do it better than the market. That's what the efficient market hypothesis. I think the efficient market hypothesis is essentially saying, look, people can say that they're good at picking stocks and maybe sometimes they can beat it. But overall, you know, it's really a fool's errand for people to... Okay. And in Tibble, Justice Breyer, the Supreme Court, it's unanimous, you're quite correct in both cases, keeps using the terms imprudent ones, imprudent ones, imprudent ones, imprudent ones. Those are the ones you're supposed to get rid of, by the way. Right. Okay. So you think the only imprudent ones are those with special circumstances? You have to agree with that, don't you? If it's a publicly traded stock on an efficiently performing market, yes. Now, there are other investments that aren't necessarily public stock. There are mutual funds. There are all kinds of things that they invest in. So it's not like they're off the hook. But when Dudenhofer talks about special circumstances, those have to be imprudent ones, right? If you have special circumstances, stocks are imprudent ones you need to get rid of. I think the special circumstances are that... Yeah, I think they're saying if there are special circumstances, and no court has found them, and courts have found the same circumstances here, where a company is ultimately headed into bankruptcy with the benefit of hindsight, they've said that you might be able to state a claim in that case. They actually don't come out and say you could. They say we're not considering whether you could in that circumstance. Do you think anything else fits in your definition of imprudent ones, except those you have special circumstances about? You could have investment instruments that are completely inconsistent. Some plans have very specific investment guidelines, written things that say, there shall be no investments in this type of... Asset allocation and diversification. Things like that. There's never been any claim like that in this case. So you're saying it could be an imprudent investment if you said, this particular stock fund, it would be appropriate for a person who wants to tolerate very little risk and is nearing retirement, and then you put the stock in it. I mean, yeah. I think if you had a situation where the plan said, we will only invest in U.S. stocks or very low risk, stable asset value type things, and then they went and invested in a mutual fund that started investing in Russian timber futures or something like that, and they found out about that. If that's clearly violating some specific provision in the investment guidelines or the plan document, yeah, that could be a case. But that's not this case. This case is simply saying they didn't predict the market. Could I ask a question? Oh, yeah, sure. In your view, is there anything different about the duty to monitor disconnected from the duty to get rid of imprudent investments? That's another phrase that goes through TIBL as well. Duty to monitor. Duty to monitor, I think, is sort of the forerunner to the duty to remove imprudent investments. So in your view, there's no freestanding duty to monitor independent of its attachment to look out for what we've been talking about here, the imprudent investment? There could be a duty to monitor, and you could be looking for things like, let's say you had a mutual fund. You might want to look and say, is the fund manager investing in the types of things that they've said, that they've told us that they're going to invest in? So in a non-publicly traded context is what you're saying is where the duty to monitor truly takes place? That's one example of where it would take place, yes. And we're not disputing that there's a duty to monitor, but the duty to monitor has to, what the other courts have, I think, correctly said is, you can't just allege a procedural duty to monitor with nothing else. There has to be an and what. And the and what is where Dudenhofer comes in. It all circles back to Dudenhofer. In the context of this particular case. Okay, thank you for your argument. We're back to you, Mr. McKenna. Okay, so he's taking you right to what I said, that the fiduciary is the same as a filing cabinet. If it's traded on a public stock exchange and it's got a price, they can just walk away. Trying to figure out a special circumstance is harder than sitting down, five people in a room with your advisors and say, is this a good investment? That's what their job is, is to figure out are these good investments? Why did you pick the Vanguard Opportunity Fund versus the TD Roe, blah, blah, blah fund? You have to have some thought in it and you have to make a decision. And no one says they have to be right. Does Dudenhofer give us examples of special circumstances? No, they do not. They just mentioned the term, right? Mentioned the term and it's been the chasing of the hare and whatever it was through the looking glass, trying to find it. No one's found one yet. Nobody's found a special circumstance because it's silly. He's saying that if it's on a public stock exchange, I'm done. It's got a price. I never have to monitor it again. I never have to think about it. I don't have to do a thing. And mutual funds have prices and are traded and bonds have prices and are traded and annuity contracts have prices and traded. Pick them, you're done. See you in a couple of years. I think the special, I may be wrong about this, but I think the special circumstance may in many cases be in the fund where the fund manager represents to the participant, particularly a mutual fund. I'm going to invest in these types of stocks or bonds. I'm going to be a very conservative fund. No, I'm going to, at least 50% is going to be in high grade triple A bonds or nothing lower than double A bonds, nothing lower than a stock that pays at least a 4% dividend. And your duty to monitor is to make sure the investments meet the benchmarks of what you said they're going to meet. Maybe not that the market says something different. Okay, the semiconductor plan says that the purpose of the plan is to provide a means whereby an employer, SEMI, may share its profits with its eligible employees on a deferred basis and thereby provide a measure of financial support for such employees and their beneficiaries upon retirement. So show me how you sat down and made a reasoned decision that holding onto SunEdison stock for no public policy reason, it's not my employer anymore, show me that you made a reasoned decision and I will dismiss my case. They will not be able to show me that. And lastly, your honors, if for any reason I haven't convinced you, then I would ask for leave to amend. We had one chance, was our one amendment as of right. We had the motion to dismiss. We had no oral argument. We never even saw a judge. You're the first judge we've seen in this case. Had no chance to try to persuade her honor that she was incorrect. So last I would ask for leave to amend. Wisdom, the cases of the Eighth Circuit say, you want to decide cases on the merits. I think this is the case and maybe if you really want to give me a boost, direct that I get the limited discovery that I wanted, those minutes of the committee. Thank you, Judge. Okay, thank you for the argument. Case 18-1626 is submitted for decision by the court.